United States Court of Appeals
For the First Circuit

No. 97-2398

NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, INC.,

Plaintiff, Appellant,

v.

MIRZA W. BAIG,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Boudin, Lynch and Lipez, Circuit Judges.

Joseph M. Hamilton, with whom Mirick, O'Connell, DeMallie
& Lougee, LLP, were on the brief, for appellant.
Robert R. Pierce for appellee.

February 4, 1999

LIPEZ, Circuit Judge. The New England Mutual Life
Insurance Company ("New England Mutual") brought this action
pursuant to the Employee Retirement Income Security Act of 1974, as
amended, 29 U.S.C. 1001-1461 ("ERISA"), to rescind disability
insurance coverage provided to Dr. Mirza W. Baig, alleging that
Baig made misrepresentations on his application. Baig filed
counterclaims based on state law. New England Mutual moved for
summary judgment on the counterclaims, arguing that all such claims
were preempted by ERISA. Baig filed a cross-motion for summary
judgment, arguing that his disability policy was not a "plan" to
which ERISA applied, and, there being no other federal question
presented, the district court consequently lacked subject matter
jurisdiction. The district court agreed with Baig and dismissed the
action under Fed. R. Civ. P. 12(b)(1). See New Eng. Mut. Life Ins.
Co. v. Baig, 985 F. Supp. 11 (D. Mass 1997). We affirm.
I.
The district court based its determination on the
following undisputed facts. Baig was hired by Cardiology Associates
of Fall River, P.C., in 1992. At that time he was its only full-
time physician employee. Baig purchased an individual disability
policy from New England Mutual. The policy issued January 3, 1994,
and covered Baig until it was rescinded on March 21, 1995. Baig
purchased the policy directly from New England Mutual. He was
listed as the beneficiary and the policy owner. According to the
terms of the policy, his coverage would not terminate if his
employment with Cardiology Associates ended, but rather would
continue so long as Baig continued to make the premium payments.
Cardiology Associates' Practice Administrator made the initial
inquiry with New England Mutual and forwarded an application to
Baig, and later directly forwarded verification of Baig's income to
New England Mutual, but otherwise the initial purchase of insurance
was made without the intervention of Baig's employer. Baig paid the
premiums directly. Pursuant to Baig's employment agreement,
Cardiology Associates reimbursed him for the premium payments.
Reimbursements were paid by Cardiology Associates only after Baig
submitted his receipts; premium payments to New England Mutual were
never channeled through Cardiology Associates. There was no
"summary plan description" describing benefits provided to Baig. No
other employees of Cardiology Associates were insured by New
England Mutual. After New England Mutual rescinded Baig's coverage,
Cardiology Associates purchased a group disability policy covering
Baig and other employees from another insurer.
II.
A. Standard of Review
The existence of an ERISA plan is a mixed question of law
and fact. See Belanger v. Wyman-Gordon Co., 71 F.3d 451, 453-54
(1st Cir. 1995). "[T]he district court's interpretation of the word
'plan' as used in ERISA poses a question of law subject to de novo
review." Id. at 453. However, "the court's inquiry into the nature
and the scope of the benefits actually at issue . . . demands
factfinding, and is to that extent reviewable only for clear
error." Id.

B. What constitutes a plan under ERISA?
New England Mutual asserts federal jurisdiction and
federal preemption pursuant to ERISA on the basis of its claim that
Baig's disability insurance coverage constitutes a "benefit plan"
under ERISA. ERISA's statutory definition of a benefit plan states
in part:
The terms "employee welfare benefit plan" and
"welfare plan" mean any plan, fund, or program
which was heretofore or is hereafter
established or maintained by an employer . . .
for the purpose of providing for its
participants or their beneficiaries, through
the purchase of insurance or otherwise, . . .
benefits in the event of sickness, accident,
disability, death or unemployment, . . . .

29 U.S.C. 1002(1)(A) (emphasis added). Thus, a disability
insurance policy like the one at issue in this case will qualify as
an "employee welfare benefit plan" and will be subject to the
strictures of ERISA if it has been established or maintained by an
employer. See 29 U.S.C. 1003(a). In determining whether a plan is
established or maintained by an employer, we must look for "the
undertaking of continuing administrative and financial obligations
by the employer to the behoof of employees or their beneficiaries."
Belanger, 71 F.3d at 454.
We look to an employer's "continuing administrative or
financial obligations" because such obligations implicate the
fundamental policy concerns at the heart of the ERISA statutory
scheme. These policy concerns can be grouped into two broad (and
sometimes overlapping) categories: concerns for the protection of
employers, and concerns for the protection of employees. As to the
former, the Supreme Court has stated that "Congress intended pre-
emption to afford employers the advantages of a uniform set of
administrative procedures governed by a single set of regulations.
This concern only arises . . . with respect to benefits whose
provision by nature requires an ongoing administrative program to
meet the employer's obligation." Fort Halifax Packing Co. v. Coyne,
482 U.S. 1, 11 (1987). A plan therefore exists under ERISA where
"periodic demands on [employer] assets . . . create a need for
financial coordination and control" on the part of the employer.
Id. at 12. More recently, the Court has stated that finding a plan
requires that the employer have at least "some minimal, ongoing
'administrative' scheme or practice . . . ." District of Columbiav. Greater Wash. Bd. of Trade, 506 U.S. 125, 130 n.2 (1992), quoted
in Belanger, 71 F.3d at 454. ERISA was also designed to provide
numerous substantive protections to employees. "ERISA's substantive
protections are intended to safeguard the financial integrity of
employee benefit funds, to permit employee monitoring of earmarked
assets, and to ensure that employer promises are kept." Belanger,
71 F.3d at 454 (citing Fort Halifax, 482 U.S. at 15).
Although "[t]here is no authoritative checklist that can
be consulted to determine conclusively if [benefits] rise to the
level of [a] plan" under ERISA, id. at 455, we will be inclined to
find a plan where there are elements that "involve administrative
activity potentially subject to employer abuse," Fort Halifax, 482
U.S. at 16. A mere purchase of insurance by an employer is not
sufficient to establish a plan under ERISA. See Wickman, 908 F.2d
at 1082. Where insurance has been purchased by an employer, the
"crucial factor in determining if a 'plan' has been established is
whether the purchase of the insurance policy constituted an
expressed intention by the employer to provide benefits on a
regular and long term basis." Id. at 1083. Similarly, whether a
"reasonable employee would perceive an ongoing commitment by the
employer to provide employee benefits" is an important
consideration. Belanger, 71 F.3d at 455.

C. Was Baig's disability coverage a "plan" under ERISA? 
New England Mutual argues that an employer's
reimbursement of premiums paid directly by an employee should
constitute substantial evidence of the existence of an ERISA plan.
The policy at issue here was not initially established by a
contractual arrangement between Cardiology Associates and New
England Mutual; rather, Baig made the initial purchase directly.
Baig paid the premiums directly to New England Mutual. The policy
was an individual policy covering only Baig himself. Under these
particular circumstances, the reimbursement by his employer of
premiums paid directly by Baig did not create a plan under ERISA.
As the district court stated:
When an employer deals directly with
the insurer and actually purchases an
insurance policy for an employee, there may be
sufficient participation to meet the
"established or maintained" requirement under
ERISA. On the other hand, an employer who
simply pays its employees enough so that the
employees are encouraged on their own to buy
insurance policies could not be thought to
have established or maintained any policy that
any individual employee might purchase. Cash
reimbursement after the fact presents no
different case.

Baig, 985 F. Supp. at 14. Even where an employer actually purchases
an insurance policy, or makes payments directly, there may not be
a "plan" for ERISA purposes. In this case even these elements are
absent, and nothing else about the coverage at issue implicates any
of the policy concerns underlying ERISA. The administrative burdens
on Cardiology Associates were nearly nonexistent, and its financial
obligations were limited to after-the-fact reimbursement, such that
there was little chance for abuse, carelessness or misappropriation
of funds of the sort that might escape Baig's oversight or threaten
his benefits.
New England Mutual also argues that Cardiology Associates
evidenced its "intention . . . to provide benefits on a regular and
long term basis," Wickman, 908 F.2d at 1083, by the terms of Baig's
employment agreement, which required Cardiology Associates to
provide disability coverage for Baig, and by the fact that after
New England Mutual rescinded Baig's policy, Cardiology Associates
purchased a group disability policy covering Baig and other
employees. In Wickman we stated that if an employer's "purchase of
the insurance policy constituted an express intention by the
employer to provide benefits on a regular and long term basis,"
such intention would be a "crucial factor" in determining the
existence of a plan. Id. Where there is such a purchase, evidence
demonstrating the express intention of an employer to provide
continuing benefits is among those "factors [which] tend to be more
indicative of the existence of a plan than others." Belanger, 71
F.3d at 455. Here, however, the employer did not purchase the
insurance. Indeed, the policy itself did not bear any relationship
to Baig's employment, and would have continued in effect as long as
Baig continued to pay the premiums, regardless of any changes in
his employment situation. Moreover, Cardiology Associates' post-hoc
actions provide, at most, only limited evidence of its intent,
under Wickman, to cover Baig on a regular and long term basis at
the time the policy with New England Mutual was purchased.
We conclude based on the undisputed facts of this case
that the district court correctly found that Baig's disability
insurance coverage was not an "employee welfare benefit plan"
governed by ERISA. Because there was no other basis claimed for
federal subject matter jurisdiction, the district court properly
dismissed the case.
Affirmed.