NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, INC., Plaintiff, Defendant in the Counterclaim,

v.

Mirza W. BAIG, M.D., Defendant, Plaintiff in the Counterclaim.

No. CIV.A. 95–12747–GAO.

United States District Court, D. Massachusetts.

Oct. 31, 1997.

Joseph M. Hamilton, Michael G. Donovan, Mirick, O'Connell, DeMallie & Lougee, Worcester, MA, for New England Mut. Life Ins. Co.

Robert R. Pierce, Thomas E. Kenney, Pierce & Mandell, Boston, MA, for Mirza W. Baig.

## MEMORANDUM AND JUDGMENT

O'TOOLE, District Judge.

Alleging that defendant Mirza W. Baig, M.D. misrepresented his prior medical treatment when he applied for a disability insurance policy, the plaintiff New England Mutual Life Insurance Company, Inc. ("New England") seeks a declaration that the policy is void. Baig has counterclaimed for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the state law prohibition against an insurer's employment of unfair or deceptive trade practices.

New England has moved for summary judgment on Baig's counterclaim on the ground that the state law claims asserted are all preempted by the Employee Retirement Income Security Act of 1974 (as amended) ("ERISA"), 29 U.S.C. § 1001 *et seq.* Baig has filed a cross-motion for summary judgment asserting that ERISA does not apply and that the Court consequently lacks subject matter jurisdiction of the action entirely. For the reasons that follow, the Court concludes that the insurance policy at issue is not a "plan" covered by ERISA, and that, there being no federal question presented, this Court lacks subject matter jurisdiction of the action. The action is ordered to be dismissed. Fed.R.Civ.P. 12(b)(1).

### Background

The following facts are undisputed. Baig is a cardiologist employed since 1992 by Cardiology Associates of Fall River, P.C. ("Cardiology Associates"). At the time he was hired, Baig was the only full-time physician employee of Cardiology Associates. New England issued a disability policy to Baig on January 3, 1994, and covered Baig under the policy until it was rescinded on March 21, 1995. Baig had purchased the individual policy himself, and he paid the premiums. Pursuant to his employment agreement, Cardiology Associates reimbursed him for those premium payments. (Kenney Aff., Ex. A at 11). No other employees of Cardiology Associates had any coverage with New England. (Baig's Statement, ¶ 2). There is no summary plan description that describes the benefits provided to Baig. The insurance policy itself is the only thing that could be considered a "plan document." Cardiology Associates also provides health insurance benefits to all full-time physicians through a group health insurance policy it has purchased.

After New England rescinded Baig's disability policy, Cardiology Associates obtained replacement disability coverage for Baig and also obtained disability coverage for other employees of Cardiology Associates through

a group disability insurance policy purchased from Guardian Life Insurance Company. (New England Life's Statement, ¶ 6).

## Discussion

■ The issue presented is whether Baig's disability insurance policy is a "plan" within the meaning of ERISA. That is a question that must " 'be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person.' " *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1082 (1st Cir.1990) (quoting *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir.1988)).

■ One of the prerequisites of an ERISA plan is that it be "established or maintained by an employer." *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 977 (5th Cir.1991); *see also, Gaylor v. John Hancock Mutual Life Ins. Co.*, 112 F.3d 460, 464 (10th Cir.1997). The "established or maintained" requirement is designed to ensure that the plan is part of an "employment relationship." *Gaylor*, 112 F.3d at 464. A court must "determine whether the plan is part of an employment relationship by looking at the degree of participation by the employer in the establishment or maintenance of the plan." *Id.* Courts have consistently construed this requirement very broadly, finding employer establishment or maintenance of a plan to include almost anything "more than a mere purchase of insurance." *Wickman*, 908 F.2d at 1082.[1]

■ New England argues that reimbursement of Baig's premiums by Cardiology Associates is sufficient employer participation to constitute a "plan." However, in the cases New England relies on the employer participated at least in the initial purchase of the insurance. In one, for example, the court was careful to point out that the insurance agreement listed the employer as purchaser, and provided that "no coverage would be provided unless the group paid the initial premium." *Robinson v. Linomaz*, 58 F.3d 365, 366 (8th Cir.1995). In other words, the employer was instrumental in the "establishment" of the plan.

That was not the case here. Rather, Baig was the only purchaser of this individual disability policy. Baig's contract with New England listed him as the beneficiary and the policy owner. Unlike in *Robinson*, where the court expressly noted that "coverage would terminate if the employee ceased to be an active, full-time employee," 58 F.3d at 366, Baig's eligibility for the disability policy was not apparently related in any way to his employment. The policy itself states that "[a]s long as the premium is paid on time, [New England] cannot change [the] Policy or its premium rate until [Baig's] 65th birthday." (Boggs' Aff., Ex. A at 1).

While the difference between direct payment of premiums by an employer and the employer's reimbursement of premiums initially paid by the employee may appear to be merely a formal one, direct payment requires some level of coordination between the employer and the insurer and thus implicates the concerns underlying the ERISA statutory scheme, while reimbursement does not. If an employer simply reimburses an employee, there is no need for the employer either to institute an ongoing administrative program or to administer funds that might be

---

1. Another factor in assessing "establishment" of a plan by an employer is "whether the purchase of the insurance policy constituted an expressed intention by the employer to provide benefits on a regular and long term basis." *Wickman*, 908 F.2d at 1083. In *Wickman*, the court found this intent evidenced by the fact that the employer had purchased more than one kind of policy for more than one employee, devised specific eligibility requirements, and distributed a handbook containing a listing of ERISA rights and a summary plan description. The court concluded that "[a]pparent from this degree of planning, precision, and detail is that the purchase of the group policy was not an aberrational or singular act,

but represented [the employer's] calculated commitment to qualified employees for similar benefits regularly in the future." *Id.*

New England argues that Cardiology Associates' intention to provide benefits to qualified employees is evidenced by the fact that it later purchased disability insurance for another physician after he was hired, and that since New England's rescission, Cardiology Associates has purchased a group disability insurance policy for its full-time physicians. (Pl's Mem. Supp. Summ. J. at 6). However, Cardiology Associates' subsequent actions are not relevant to the determination of whether it had "established" a plan at the time of Baig's purchase of this policy.

subject to abuse or misappropriation. *See, Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987) (finding that because a program required a single payment, employers were not required to establish "an ongoing administrative program," and thus ERISA concerns were not implicated). *See also, Hansen,* 940 F.2d at 974. Here the plan—the disability policy itself—is an arrangement between Baig and New England, and does not require employer participation at all.[2]

When an employer deals directly with the insurer and actually purchases an insurance policy for an employee, there may be sufficient participation to meet the "established or maintained" requirement under ERISA. On the other hand, an employer who simply pays its employees enough so that the employees are encouraged on their own to buy insurance policies could not be thought to have established or maintained any policy that any individual employee might purchase. Cash reimbursement after the fact presents no different case.

*Conclusion*

For these reasons, the policy is not an "employee benefit plan" governed by ERISA. It follows that no cause of action arises under ERISA. There being no other basis for jurisdiction claimed or apparent, the case is dismissed for lack of subject matter jurisdiction.

**2.** It appears that New England was not even aware that Baig was being reimbursed by Cardiology Associates for the premium payments. New England originally sued in a Massachusetts state court and learned that Cardiology Associates reimbursed Baig for premiums when it deposed Cardiology Associates' administrator, Diane Teixeira. (Hamilton Aff., Ex. A at 21–22). The possibility that ERISA might control led New England to bring this action. New England's lack of awareness of any role on the part of Cardiology Associates in Baig's purchase of the policy is itself evidence of the employer's lack of participation in this policy.