Lauriat, J.
Carol A. Ritter (“Ritter") brought this action against Massachusetts Casualty Insurance Company (“Massachusetts Casualty”) alleging breach of contract and violations of G.L.c. 93A. The matter is before the court on cross motions for summary judgment by Ritter and Massachusetts Casualty. Ritter is seeking a judgment on the merits of her breach of contract and G.L.c. 93A claims. Massachusetts Casualty is seeking to dismiss Ritter’s claims because they were brought under state law and are preempted by the Employee Retirement Income Security Act, 29 U.S.C. §1001, etseq. (“ERISA”). For the reasons stated below the plaintiffs motion for summary judgment is denied, and defendant’s summary judgment motion is allowed.
BACKGROUND
Ritter and her brother, Timothy Kaminski (“Kaminski”) each owned half of Boston Physical Therapy. On January 1, 1989, Boston Physical Therapy instituted a benefit plan for its employees, which included profit sharing, retirement planning, healthcare benefits and disability insurance. Kaminski was designated the plan administrator of this benefit package.
Due to the insolvency of a prior insurer, Ritter, Kaminski and another Boston Physical Therapy employee were left without disability insurance. In October of 1991, Kaminski applied to Massachusetts Casualty for a disability policy. Kaminski handled the negotiations with Massachusetts Casualty and informed them that Boston Physical Therapy would pay all premiums. On January 10, 1992, Massachusetts Casualty issued individual policies to Ritter and Kaminski. All premium payments on Ritter’s and Kaminski’s individual policies were paid together via single checks signed by Kaminski and drawn on the corporate account of Boston Physical Therapy. Ritter claims, however, that the Massachusetts Casualty policy that pertained to her (the “Policy”) was not part of the company’s benefit package and therefore not part of an ERISA plan. She asserts that she was personally responsible for the premiums on the Policy and that Boston Physical Therapy’s payment of those premiums was merely an “administrative convenience.” Ritter contends that each premium payment made by Boston Physical Therapy was reimbursed by her personal check or reported as taxable income.
On December 14, 1992, Ritter became “totally disabled” as defined in the Policy. Total disability and the availability of benefits are described in Part 1, Section A of the Policy which reads:
The term “total disability” shall mean your substantial inability to perform the material duties of your work due to Injuiy or Sickness. But, after 60 successive months of total disability for which monthly benefits have been paid, and if such disability continues, the term shall then mean your substantial inability to perform the material duties of any gainful work for which you are suited, having due regard: (1) for your earning ability from the Policy Date; (2) for your education; (3) for your training; and (4) for your experience. Work means: (1) your regular occupation, trade or profession; and (2) as such exists at the start of any period of disability for which a claim for benefits is made under this Policy.
Massachusetts Casualty paid benefits as outlined in the above provision for 60 months, concluding on October 12, 1998. At that time, Massachusetts Casualty stopped benefit payments on the basis that Ritter no longer fit the Policy’s definition of totally disability. Massachusetts Casualty based its decision, at least in part, on an expert report it commissioned which found that there was gainful work Ritter could do which substantially matched her taxable income prior to the date she became disabled.
Ritter disputes this determination, alleging that Massachusetts Casualty had never pointed to any specific job with duties that Ritter could perform, had *23 not shown due regard for the four factors used to define “gainful work"as that term would apply to her, and had improperly substituted the term “taxable income” for “earning ability” in contravention of the Policy’s language and intent. Ritter alleges that these acts by Massachusetts Casualty breached the contract of insurance between the parties and constituted unfair and deceptive trade practices in violation of G.L.c. 93A.
DISCUSSION
The court will grant summary judgment when there are no genuine issues of material fact and where the record, including the pleadings and affidavits entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating that there are no triable issues. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The non-moving party cannot defeat a summary judgment motion by resting on the pleadings or merely asserting disputed issues of fact. Lalonde v. Eissner, 405 Mass. 207, 209 (1989). However, for the purposes of a summary judgment, the court will review the facts and all reasonable inferences from those facts in the light most favorable to the non-moving party. Ford Motor Co., Inc. v. Barrett, 403 Mass. 240, 242 (1988).
I.
As an initial matter, the court must consider whether Massachusetts Casualty’s claims of ERISA preemption, raised for the first time in its summary judgment motion, are properly before the court. Preemption questions raise important issues of subject matter jurisdiction which cannot be waived. Paul Revere Life Insurance Co. v. Payne, No. 94-2575 (Mass. Super. Ct. March 17, 2000) (Fecteau, J.). Since preemption questions raise the issue of the court’s subject matter jurisdiction, Massachusetts Casualty can assert the applicability of ERISA at any point in the litigation. ERISA’s statutory scheme allows for concurrent jurisdiction in federal and state courts over “civil actionfs] . . . brought by a participant or beneficiary [of an employee benefit plan] ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.” 29 U.S.C. § 1132(e)(1). It follows that if, on the undisputed material facts before the court, Ritter is bringing her claim as a “participant or beneficiary of an employee benefit plan” the court’s exercise of its concurrent jurisdiction is proper, even if Ritter’s state law claims are preempted by ERISA.
II.
ERISA defines an employee welfare benefit plan, in pertinent part, as:
Any plan, fund, or program which was . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of sickness, accident, disability, death or unemployment.
29 U.S.C. §1002(1). The parties concede that this statutory definition fits the Policy save for a single crucial element. Ritter contends that the Policy was not “established or maintained by an employer,” but rather was established and maintained by her as individual coverage.
Any determination of whether a plan can be considered an ERISA plan must start with a consideration of the goals of the ERISA legislation. O'Connor v. Commonwealth Gas Co., 251 F.3d 262, 266 (1st Cir. 2001). Those goals are directed to employers and employees alike. Employers benefit from the elimination of state-by-state regulation of their benefit plans that subject companies to potentially inconsistent obligations. Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 12 (1987). Employees benefit from ERISA by increased safeguards of the financial integrity of employer benefit funds, the ability to monitor earmarked assets, and increased assurances that employers will keep their promises. Fort Halifax, 482 U.S. at 15.
ERISA goals become increasingly implicated as the level of employer involvement with employee benefit plans rises. Fort Halifax makes clear that a single, lump sum payment will not qualify as an ERISA plan. Extending this logic, the First Circuit Court of Appeals has held that a series of lump sum payments made available annually also will not qualify as an ERISA plan. Belanger v. Wyman-Gordon Co., 71 F.3d 451 (1st Cir. 1995). ERISA plans will be found if the employer’s involvement requires “the undertaking of continuing administrative and financial obligations by the employer.” Belanger, 71 F.3d at 454. The nature and extent of the employer’s obligation “are the touchstone of the determination if they require an ongoing administrative scheme subject to mismanagement." O’Connor, 251 F.3d at 267.
The evidence on the record before the court demonstrates that Kaminski, as Boston Physical Therapy’s benefits plan administrator, sought out and applied for the disability insurance policy in question along with policies for other company personnel. He represented that Boston Physical Therapy would pay all the premiums and it received a discount rate as a result. Additionally, single checks to pay the premiums for all employees covered by Massachusetts Casualty were drawn on Boston Physical Therapy’s corporate account for several years. Massachusetts Casualty contends that these activities constitute the type of continuing financial and administrative obligations that are the hallmarks of an ERISA plan.
Ritter disputes Massachusetts Casualty’s characterization on several grounds. First, she states that Boston Physical Therapy never intended to supply her with an employee benefit with respect to the Policy. In support of that position, Ritter points to the company’s failure to subject the Policy to the same tax treatment it *24 applied to other components of the employee benefit plan and to her reception of the benefits as either taxable income or a reimbursable debt. The First Circuit Court of Appeals recently downplayed the weight given to an employer’s intent to establish an ERISA plan. “Although we have in the past characterized an employer’s intent as [’]the crucial factor in determining if ‘a plan’ had been established,’ Wickman v. Northwestern National Insurance Co., 908 F.2d 1077, 1083 (1st Cir. 1995), indicators of intention give little aid in a case . . . where the evidence of those intentions is far from uniform.” O'Connor 251 F.3d at 272. As Massachusetts Casualty’s and Ritter’s references to the facts demonstrate, this case does not present uniform evidence of Boston Physical Therapy’s intentions. Even viewed in the light most favorable to Ritter, the court cannot conclude that the evidence presented provides a reliable guide to determining the existence of an ERISA plan.
Ritter next asserts that she is exempt from ERISA by reason of the “safe harbor provisions” promulgated by the U.S. Department of Labor. This refers to regulations that exempt an employer’s group insurance programs from ERISA coverage “where the employer does not make contributions to the coverage; participation by employees is voluntary and the employer does no more than (1) permit the insurer to publicize the program (without endorsing it), and (2) ‘collect premiums through payroll deductions or dues checkoffs and remit them to the insurer.’ ” New England Mutual Life Insurance Co. v. Baig, 166 F.3d 1, 5 n.5 (1st Cir. 1999), quoting 29 C.F.R., §2510.3-1(j) (1988)). Even in the light most favorable to Ritter, the undisputed evidence before the court shows that Boston Physical Therapy has done more than the minimal tasks outlined in these regulations. Simply by seeking out the coverage and deciding which employees it will allow to have the benefit, Boston Physical Therapy has sailed out of this safe harbor.
Ritter relies on Baig for the proposition that merely writing checks is insufficient to establish an ERISA plan. Even assuming that Boston Physical Therapy did no more than write a few checks, Baig is clearly distinguishable on its facts. The company in Baig wrote checks directly to an employee to reimburse him for an insurance policy that the employee obtained and paid for in the first instance. Unlike Boston Physical Therapy, the employer in Baig never spoke with the insurance company on the employee’s behalf (other than to verity employment), and never applied for a policy or paid premiums directly to the insurance company. Additionally, the First Circuit has recently reconsidered its ruling in Baig. Upon reflecting that a mere continuation of benefits under the Consolidated Omnibus Budget Reconciliation Act (COBRA) was sufficient to implicate an ERISA plan in Demers v. CIGNA Corp., 173 F.3d 443, 447 (1st Cir. 1999), the First Circuit concluded that an “employer’s premium payments to facilitate coverage is enough to implicate ERISA.” O’Connor, 251 F.3d at 270.
On the undisputed evidence before the court, it is clear that Boston Physical Therapy, at minimum, facilitated Massachusetts Casualty’s coverage of Ritter, that the Department of Labor’s safe harbor provisions are inapplicable to Boston Physical Therapy, and that the Policy placed continuing demands on the company’s administrative and financial resources. Therefore, the court concludes that the Policy is one that fits the statutory requirement of being “established and maintained by the employer,” and the Policy is therefore within the ambit of ERISA.
III.
Merely finding that a benefit plan is subject to ERISA does not mean that all state law claims are automatically preempted. The statute states that ERISA preempts all state laws that “relate to” employee benefit plans. 29 U.S.C. §1144(a). Conceding that this formulation was not very helpful, the United States Supreme Court instructed lower courts to look to the legislative objectives as a guide to which state laws will survive ERISA preemption. New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co., 514 U.S. 645, 656 (1995). Accordingly, the Court “made clear that ERISA preempts, inter alia, two kinds of state laws: (1) [those] that amount to alternative enforcement mechanisms to those in ERISA §502(a), and (2) [those] that present the threat of conflicting and inconsistent regulation that would frustrate uniform national administration of ERISA.” Danca v. Private healthcare Systems, Inc., 185 F.3d 1, 7 (1st Cir. 1999).
Ritter’s breach of contract claim falls within the first category of preempted state law claims. A breach of contract claim is “in substance, an alternative enforcement mechanism to that set forth in ERISA.” Paul Revere Life Insurance Co. v. Payne, supra, citing Turner v. Fallon Community Health Plan, Inc., 127 F.3d 196, 199-200 (1st Cir. 1997).
Ritter’s claim for relief based on violations of G.L.c. 93A falls into the second category of preempted state laws, because it would subject an ERISA plan to precisely the type of state-by-state regulation that the federal legislation was designed to eliminate. Paul Revere Life Insurance v. Payne, supra and cases cited.
Since the court concludes that the Policy is an ERISA plan and that Ritter’s state law claims are preempted by the ERISA statute, Ritter’s action must be dismissed. This leaves Ritter without a claim properly before the court. Accordingly, the court does not reach or consider the merits of Ritter’s summary judgment motion.
ORDER
For the foregoing reasons, Plaintiffs Motion for Summary Judgment is DENIED without prejudice, and Defendant, Massachusetts Casualty Insurance Company’s Motion for Summary Judgment is ALLOWED.