**Jorge Luis MERCADO COLLAZO, et al., Plaintiffs,**

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

No. CIV.99–1595 RLA.

United States District Court, D. Puerto Rico.

Aug. 23, 2002.

190

Jorge E. Vélez Vélez, Raúl E. González–Díaz, San Juan, PR, for Plaintiffs.

Arturo Bauermeister, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendant.

### ORDER REMANDING CASE
### TO STATE COURT

ACOSTA, District Judge.

Present before the court for disposition is plaintiffs' request for remand of this action to state court and in the alternative, a demand for jury trial. Both petitions have been duly opposed by defendant and are hereby disposed of as follows.

## PROCEDURAL BACKGROUND

This action was initially filed in the Superior Court of the Commonwealth of Puerto Rico, San Juan Part, based on defendant's failure to pay plaintiff JORGE LUIS MERCADO–COLLAZO monthly benefits allegedly due under a group long term disability plan. Specifically, plaintiff and his spouse request compensation for damages allegedly caused by defendant's bad faith breach of the terms of the policy. In the alternative, plaintiffs demand specific performance of the contract, i.e., payment of the monthly benefits to MR. MERCADO–COLLAZO in addition to attorney's fees, and litigation expenses.

Plaintiffs object to our removal jurisdiction and have petitioned remand of the case to the local court.

## THE FACTS

Defendant LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA")

issued a Group Long Term Disability Income Policy to the benefit of CONAGRA INC.'s [CONAGRA] employees effective August 1, 1989.

Plaintiff MERCADO–COLLAZO was employed by CONAGRA and covered by the aforementioned policy.

In June 1993 plaintiff MERCADO–COLLAZO became totally disabled and unable to work.

Plaintiff MERCADO–COLLAZO received monthly disability insurance benefits pursuant to the aforementioned policy from January 1994 to December 1995.

## REMOVAL

■ Removal jurisdiction will depend on whether or not the transferred action could have been originally brought in federal court based on a claim or right arising under ERISA. *See* 28 U.S.C. § 1441(b). Ordinarily removal jurisdiction will be determined by examining the allegations in the complaint—a principle otherwise known as the well-pleaded complaint rule—without regard to any federally-based defenses that a defendant may be entitled to. There is, however, an exception to this principle. When Congress completely preempts a specific area "any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co., v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Danca v. Private Health Care Sys., Inc.,* 185 F.3d 1, 4 (1st Cir.1999); *BIW Deceived v. Local 56,* 132 F.3d 824, 831 (1st Cir.1997). The court will examine the true nature of the claim and if it indeed falls within the preempted domain federal jurisdiction will attach regardless of the complaint's characterization of the matter as a purely local concern.

## PREEMPTION

Two types of preemption have emerged under ERISA: conflict preemption and complete preemption. While both supersede state laws with federal laws, they vary in their effect on the court's subject matter jurisdiction to entertain ERISA claims.

■ Complete preemption comes into play when Congress has totally occupied a particular field rendering state-based claims as federal thereby providing federal courts with subject matter jurisdiction. It impacts on the court's jurisdiction in that once it is determined that Congress has preempted a particular area of law, state claims are displaced and recharacterized as federal claims instead. *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1487 (7th Cir.1996); *Rice v. Panchal,* 65 F.3d 637, 640 (7th Cir.1995).

■ Conflict preemption, on the other hand, arises under section 514(a) of ERISA, 29 U.S.C. § 1144(a) whereby ERISA preempts "all state laws insofar as they... relate to any employee benefit plan" covered by § 1003(a). This type of preemption does not afford federal jurisdiction but rather serves as a defense to state law actions. *Danca,* 185 F.3d at 7.

[S]tate law claims that are merely subject to "conflict preemption" under § 514(a) are not recharacterized as claims arising under federal law; in such a situation, the federal law serves as a defense to the state law claim, and therefore, under the well-pleaded complaint rule the state law claims do not confer federal question jurisdiction. Thus, complete preemption under § 502(a) creates federal question jurisdiction whereas conflict preemption under § 514(a) does not.

*Rice,* 65 F.3d at 640.

■ In sum, complete preemption is a jurisdictional doctrine whereas conflict

preemption is a federal defense preemption. Complete preemption operates as an exception to the well-pleaded complaint rule by allowing the court to examine the true nature of the claim, recharacterize it as a federal cause of action if warranted, and consequently authorize its removal. *BIW Deceived v. Local S6*, 132 F.3d at 831. *See also Rice*, 65 F.3d at 640 (difference between the two is important because complete preemption has jurisdictional consequences).

## ALTERNATIVE ENFORCEMENT MECHANISM

For purposes of ERISA complete preemption will occur when the state cause of action asserted in the complaint is deemed an "alternative enforcement mechanism" within the scope of § 502(a), 29 U.S.C. § 1132(a).[1] *Danca*, 185 F.3d at 5. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (state tort suits alleging improper processing of claims for benefits under ERISA-covered plans fall within the scope of § 502(a) and are deemed federal questions).

In *Pilot* the Supreme Court held that "the civil enforcement provisions of ERISA § 502[are] the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits, and that varying state causes of actions for claims within the scope of § 502(a) would pose an obstacle to the purposes and objectives of Congress." 481 U.S. at 52, 107 S.Ct. at 1555, 95 L.Ed.2d at 50–51.

■ The preemptive force of ERISA's exclusive civil enforcement provisions pursuant to § 502(a) is such that it displaces all state actions "brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans [which shall] be treated as federal questions governed by § 502(a)." *Pilot*, 481 U.S. at 56, 107 S.Ct. at 1557, 95 L.Ed.2d at 53.

We must then look into the true nature of the claim asserted in this action without regard to plaintiff's characterization thereof and determine whether or not it falls within the ambit of § 502(a), ERISA's complete preemption domain, capable of conferring removal jurisdiction.

## WELFARE BENEFITS PLAN

It is undisputed that the crux of this litigation is plaintiffs' challenge to the processing of his disability benefits claim which is similar to the § 502(a) provision. However, ERISA preemption will be triggered only if the disability insurance at issue constitutes a welfare benefit plan within the meaning of ERISA. Employee welfare benefit plans covered by the provisions of ERISA, are defined as "any plan . . . **established or maintained** by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance . . . benefits in the event of . . . disability. . . ." 29 U.S.C. § 1002(1)(A) (emphasis ours). This determination is a mixed question of law and fact. *New England Mut. Life Ins. Co., Inc. v. Baig*, 166 F.3d 1, 3 (1st Cir.

---

**1.** This provision allows for civil actions to (1) recover benefits, (2) enforce rights, or (3) clarify rights allegedly due under the terms of a plan.

In pertinent part § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) reads:

(a) Persons empowered to bring a civil action

A civil action may be brought -
   (1) . . . .
   (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. . . .

1999); *Belanger v. Wyman–Gordon Co.*, 71 F.3d 451, 454 (1st Cir.1995).

There is no set formula for deciding whether or not a plan has been established within the meaning of ERISA since, apart from providing a definition at § 1002(1)(A) ERISA offers no guidance as to what constitutes a welfare benefit plan. *Demars v. CIGNA Corp.*, 173 F.3d 443, 446 (1st Cir. 1999); *New England Mut. Life Ins. Co.*, 166 F.3d at 4; *Belanger*, 71 F.3d at 455. The courts have traditionally relied on the underlying purposes of ERISA in ruling on its applicability. ERISA's preemption seeks to protect employers from the onus of having to abide by diverse rules and regulations while at the same time safeguarding employees from potential employer's abuse or misuse of funds destined for their benefit. *O'Connor v. Comm. Gas Co.*, 251 F.3d 262, 266 (1st Cir.2001); *New England Mut. Life Ins. Co.*, 166 F.3d at 4; *Demars*, 173 F.3d at 444.

> Two of ERISA's cardinal goals—protection of employers and protection of employees—appear to have influenced the court's interpretation of what constitutes a plan. As to the former goal, the Court acknowledges that Congress designed ERISA's preemption provision partially to protect employers from a "patchwork scheme" of regulations in respect to employee benefits...
>
> As to ERISA's other, more important goal, the Court recognized that, in general ERISA's substantive protections are intended to safeguard the financial integrity of employee benefit funds to permit employee monitoring of earmarked assets, and to ensure that employers' promises are kept.

*Belanger*, 71 F.3d at 454 (citations and internal quotations omitted).

Accordingly, crucial to this analysis is the extent of administrative and financial control the employer retains over the purported benefit because therein lies its potential for abuse and the statute's underlying concern. *New England Mut. Life Ins. Co.*, 166 F.3d at 4.

A key factor in determining whether a plan has been "established or maintained" in accordance with the statute is " 'the undertaking of continuing administrative and financial obligations by the employer to the behoof of employees or their beneficiaries.' " *New England Mut. Life Ins. Co.*, 166 F.3d at 3 (citing *Belanger*, 71 F.3d at 454); *Demars*, 173 F.3d at 446. In other words, whether the employer's benefit obligations "require an ongoing administrative scheme that is subject to mismanagement". *O'Connor*, 251 F.3d at 267.

Inasmuch as this case comes to us by way of removal the only evidence available for determining whether or not the disability policy issued by LINA constitutes a welfare benefit plan covered by ERISA are the allegations in the complaint and the insurance policy. Examination of the complaint is futile inasmuch as plaintiff has not included any allegation regarding the employer's administrative or financial responsibility over the policy. Similarly, the policy contains no information evincing that the disability insurance provided was part of a welfare benefit plan in any way administered and/or maintained by CONAGRA for its employees. All we can ascertain from the insurance contract is the fact that it was purchased by CONAGRA and that CONAGRA paid the premiums in full.

Simply put, based on the limited record available we cannot reasonably conclude that the disability policy at issue constitutes a plan "established or maintained" by the employer as required by ERISA. There is no information before us regarding CONAGRA's administrative or financial control over the policy which could trigger a potential for mismanage-

ment. As pointed out by the court in *New England Mut. Life Ins. Co.*, 166 F.3d at 5:

> [N]othing else about the coverage at issue implicates any of the policy concerns underlying ERISA. The administrative burdens were nearly non-existent and its financial obligations were limited to reimbursement... such that there was little chance for abuse, carelessness or misappropriation of funds of the sort that might escape [insured's] oversight or threaten his benefits.

Further, the mere purchase of insurance—which is all we have presently before us—has been held insufficient to constitute a plan under ERISA. *New England Mut. Life Ins. Co.*, 166 F.3d at 4; *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1082 (1st Cir.1990)

## CONCLUSION

Based on the foregoing, we find that absent a welfare benefit plan within the meaning of ERISA we lack jurisdiction to entertain this suit based on the complete preemption doctrine.

Accordingly, plaintiffs' request for remand[2] is **GRANTED** and this action is hereby **REMANDED** to the Superior Court of the Commonwealth of Puerto Rico, San Juan Part.[3]

IT IS SO ORDERED.

### *JUDGMENT REMANDING CASE TO STATE COURT*

The court having remanded the present action to state court through its Order issued on this date, it is hereby

ORDERED AND ADJUDGED that this action be and the same is hereby **REMANDED** to the Superior Court of the Commonwealth of Puerto Rico, San Juan Part.

IT IS SO ORDERED.

---

**2.** *See* Plaintiffs' request (dockets No. 26, 45, 46, 47, 48, 49 and 50) and defendant's opposition thereto (dockets No. 30, 36, and 44).

**3.** Based on our ruling defendant's request to strike the jury demand (docket No. 5) is MOOT. *See* Plaintiffs' response (docket No. 12).