**Edward Mark DREZNIN, Individually and as Administrator of the Estate of Susan Marie Dreznin, Plaintiff,**

v.

**RELIANCE STANDARD LIFE INSURANCE COMPANY, Defendant.**

No. CIV.A. 01–12259–NMG.

United States District Court, D. Massachusetts.

Dec. 15, 2004.

Mark A. Rosen, Manchel & Brennan, P.C., Newton, MA, for Plaintiff.

Joshua Bachrach, Rawle & Henderson, LLP, Philadelphia, PA, Gary N. Stewart, Rawle & Henderson LLP, Harrisburg, PA, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

In the present dispute, Plaintiff Edward Mark Dreznin ("Dreznin"), Individually and as Administrator of the Estate of Susan Marie Dreznin ("the decedent"), alleges that Defendant Reliance Standard Life Insurance Company ("RSL") breached a contract with the decedent and engaged in an unfair business practice when it claimed, following her death, that she was not covered under a group term life insurance policy offered through her employer. RSL now moves for summary judgment.

### I. *Factual Background*

The decedent was an employee of Innovative Luggage, Inc. ("Innovative") and Innovative offers its employees group term life insurance pursuant to a program underwritten by RSL. Under the program, employees under 60 years of age receive a guaranteed $50,000 of coverage if they submit an application and the premiums for it are paid by Innovative.

Employees can also seek $200,000 of additional coverage by filling out an application and obtaining approval from RSL. RSL's policy documentation states that the additional coverage becomes effective "on the first day of the month following the date the application is signed, provided the Insurance Company agrees to insure such person and any additional premium is received." Employees are responsible for paying premiums due for that additional coverage.

On December 7, 1998, the decedent applied for $250,000 of coverage ($50,000 of guaranteed coverage plus $200,000 of additional coverage) and authorized the release of her medical records in connection with her application. RSL did not thereafter notify decedent that she had been approved or disapproved for the additional coverage but did begin the automatic deduction of monthly premiums from her salary on January 1, 1999.

On April 16, 1999, the decedent died and a claim was submitted to RSL on her behalf to obtain the $250,000 benefit. On May 19, 1999, RSL notified Plaintiff that the $200,000 non-guaranteed portion of her coverage had been denied on medical grounds. Specifically, RSL alleges that it denied coverage based on information from decedent's physician which was generated before decedent's application was submitted but not obtained by RSL until April 23, 1999 (seven days after decedent's death). Thus, RSL did not consider whether to accept coverage of the decedent until after her death.

Plaintiff appealed the denial of coverage on August 25, 1999 and RSL upheld its initial decision. On December 19, 2001, Plaintiff filed the instant action alleging breach of contract (Counts I, III), breach of the implied covenant of good faith and fair dealing (Counts II, IV), violation of M.G.L. c. 93A (Count V) and violation of M.G.L. c. 176D § 3(9)(f) (Count VI).

Defendant now moves for summary judgment on the grounds that: 1) the group term life insurance at issue is an ERISA "employee benefits plan", 2) as such, Plaintiff's state law claims, which are related to that plan, are preempted by ERISA and 3) because Plaintiff cannot prove an ERISA claim, dismissal, rather than leave to amend the complaint, is appropriate. Plaintiff responds that his claims are not preempted but, even if they are, he should be permitted to amend the complaint to state an ERISA claim.

## II. *Legal Analysis*

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Analysis

#### 1. *Existence of an ERISA Employee Benefit Plan*

The first issue to be decided is whether the life insurance program in question is governed by ERISA because, if it is not, ERISA is irrelevant and Plaintiff's claims survive. ERISA applies to any arrangement between an employer and employees that qualifies as an "employee benefit plan". 29 U.S.C. § 1003(a). One kind of employee benefit plan is an "employee welfare benefit plan" which is defined as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services ...

29 U.S.C. § 1002(1).

The defining characteristic of an ERISA employee welfare benefit plan ("ERISA plan") is that it is "established or maintained by an employer". *New England Mutual Ins. Co. v. Baig,* 166 F.3d 1 (1st Cir.1999). In determining whether a program has been established or maintained by an employer within the meaning of ERISA, courts look for "the undertaking of continuing administrative and financial obligations by the employer to the behoove of employees or their beneficiaries." *Id.* (citing *Belanger v. Wyman–Gordon Co.,* 71 F.3d 451, 454 (1st Cir. 1995)). More specifically, where insurance has been purchased by an employer, "the

crucial factor in determining if a 'plan' has been established is whether the purchase of the insurance policy constituted an expressed intention by the employer to provide benefits on a regular and long term basis." *Id.* at 4 (citation and quotation omitted).

■ In this case, there are several reasons why the program is an ERISA plan. First, Innovative prepared a "summary plan description" ("SPD") of the program. An SPD is a document, given to participants, that is only required if ERISA is applicable. The SPD in this case specifically states that coverage is to be governed by ERISA and identifies Innovative as the "plan sponsor". Thus, contrary to Dreznin's assertion that there is no evidence that "Innovation [sic] Luggage or its employees understood that the life insurance policy was part of a plan that would be governed by ERISA", employees were, in fact, informed that the program was an ERISA plan.

Second, Innovative undertook continuing responsibilities with respect to the program at issue. The program was structured such that Innovative would select which employees would be eligible for coverage and what amounts it would contribute toward that coverage. When the policy was issued, it was issued to RSL rather than to individual employees. Thus, RSL both "established" the policy and had the "expressed intention ... to provide benefits on a regular and long term basis". *See id.* at 3.

Plaintiff argues that, because there is no further work to be done by Innovative with respect to a specific employee once a policy is issued, RSL has not undertaken any "continuing administrative ... obli-

gations". That statement is inaccurate, however, because RSL does have continuing responsibility for administration of the plan to employees in general, including setting continuing eligibility and contribution criteria. The fact that there is nothing left to be done with regard to a specific employee is beside the point.

Finally, RSL argues persuasively that the initial, guaranteed $50,000 of coverage and the additional, elective coverage were merely "separate lines" of a single, overall ERISA plan. In other words, the guaranteed $50,000 of coverage, which is a group term life insurance policy for employees and is paid for by Innovative, is a classic example of a plan governed by ERISA. *See* 29 U.S.C. § 1002(1). It appears that the additional $200,000 in coverage is an extension of that same plan and, as such, cannot reasonably be excluded from governance by ERISA. *See Peterson v. American Life and Health Ins. Co.,* 48 F.3d 404 (9th Cir.1995). Accordingly, the life insurance program in question is an employee welfare benefit plan within the meaning of ERISA.

### 2. *Preemption of Plaintiff's Claims by ERISA*

Having determined that an ERISA plan exists, the next issue concerns whether Plaintiff's claims relating to that plan are preempted by ERISA. ERISA preempts "any and all State laws insofar as the may now or hereafter relate to any employee benefit plan". 29 U.S.C. § 1144(a).[1] ERISA, however, contains a savings clause which saves "any law of any State which regulates insurance, banking, or securities." *Id.* § 144(b)(2)(A). Accordingly,

---

1. The statutory text demonstrates the fallibility of Plaintiff's argument that his claims are not preempted because they "do not arise from any rights under the Innovation [sic] Luggage Benefit Plan". ERISA preemption does not require that Plaintiff's claims "arise from" an ERISA plan but only that they "relate to" one. 29 U.S.C. § 1144(a).

Plaintiff's claims survive to the extent that they arise under state law that is "specifically directed toward" the insurance industry. *Kentucky Assoc. of Health Plans, Inc. v. Miller,* 538 U.S. 329, 334, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003).

The Supreme Court recently announced two requirements that must be met by a state insurance law for it to be saved from preemption:

> First, the state law must be specifically directed towards entities engaged in insurance. [Second], the state law must substantially affect the risk pooling arrangement between the insurer and the insured.

*Id.* at 342, 123 S.Ct. 1471. Each of the counts of Plaintiff's complaint will be examined in light of that test.

█ The complaint contains counts for breach of contract (Counts I, III) and for breach of the implied covenant of good faith and fair dealing (Counts II, IV). It is beyond discussion that those claims are not "specifically directed towards entities engaged in insurance" and they are, therefore, preempted.

█ Similarly, Count V of the complaint states a claim for unfair business practices under the Massachusetts Consumer Protection Act, M.G.L. c. 93A. Plainly, that statute is not focused on insurance and therefore Count V is also preempted.

█ Finally, the complaint alleges a violation of M.G.L. c. 176D § 3(9)(f) (Count VI). That statutory provision prohibits insurance providers from "failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Accordingly, this Court presumes that Count VI satisfies prong one of the *Miller* test.

To avoid preemption, however, M.G.L. c. 176D § 3(9)(f) must also "substantially affect the risk pooling arrangement between the insurer and the insured". Plaintiff does not argue that prong two is met, nor could he, because M.G.L. c. 176D § 3(9)(f) merely compels insurers to act quickly to do that which they were already obligated to do: pay meritorious claims. Plaintiff does not suggest, nor does this Court see, how the subject statute could affect insurance risk pooling. Accordingly, Count VI is preempted.

### 3. *Leave to Amend the Complaint*

Finally, Defendant argues that this Court should not "convert the improper claims in the complaint into a claim under ERISA" because the Plaintiff could not prevail on an ERISA claim in any event. Defendant stresses that the policy language is clear: coverage begins when RSL agrees to insure a participant. Defendant did not notify the decedent that it had agreed to cover her and thus, it contends, she was not covered at the time of her death. Defendant further asserts that, if this Court were to conduct a review of the denial of coverage, the "arbitrary and capricious" standard would apply and affirmance of RSL's decision would be mandated. Consequently, the Defendant concludes that allowing Plaintiff to state an ERISA claim would be futile.

Fed.R.Civ.P. 15(a) instructs that "leave [to amend] shall be freely given when justice so requires." However, "a court has the discretion to deny [amendments] if it believes that, as a matter of law, amendment would be futile". *Carlo v. Reed Rolled Thread Die Co.* 49 F.3d 790, 792 (1st Cir.1995).

This is not a case in which an amendment would be futile "as a matter of law" for several reasons:

█ 1. Precedent suggests that if a plan administrator is laboring under a con-

flict of interest then its decisions are subject to heightened judicial review (i.e. stricter than the arbitrary and capricious standard). *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). It is possible (although this Court does not now decide) that such heightened scrutiny would apply here because RSL was in the peculiar position of making the benefits determination after the decedent's death, i.e. at a time when allowing coverage would render it immediately liable for payment of the benefit. Heightened review would increase the chance that Plaintiff could satisfy its burden of demonstrating that RSL's decision to deny coverage was unwarranted. Thus, although summary judgment may eventually be warranted, Plaintiff has a colorable ERISA claim for wrongful denial of benefits.

■ 2. There is an unresolved issue in the First Circuit concerning whether a claim for equitable estoppel may be brought under ERISA. *Mauser v. Raytheon Co. Pension Plan for Salaried Employees,* 239 F.3d 51 (1st Cir.2001). If that issue were resolved in Plaintiff's favor, he would have a meritorious claim for equitable estoppel because RSL accepted four months of premium payments without objection. Because the law is unsettled, an amendment of the complaint cannot be said to be futile "as a matter of law".

■ 3. Even if it was proper to deny benefits to Plaintiff, he may have a claim for restitution under ERISA. *Mertens v. Hewitt Associates,* 508 U.S. 248, 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)(holding that the "equitable relief" available under ERISA includes restitution). Here, decedent paid four months of premiums but was denied coverage and the record before the Court is unclear as to reimbursement. In the unlikely event that the premiums

were not refunded, Plaintiff would have a claim to recover them.

4. In light of this Court's determination that the life insurance program in question is governed by ERISA, an issue arises as to whether Defendant has provided the (numerous) procedural safeguards that the statute and regulations mandate. This Court declines to examine those regulations on the Plaintiff's behalf but, given Plaintiff's reasonable, though erroneous, conclusion that ERISA would not apply to this case, justice requires that he be afforded the opportunity to amend the complaint to include any such claims.

### ORDER

In accordance with the foregoing, Defendant's Motion for Summary Judgment (Docket No. 18) is **ALLOWED**, in part, and **DENIED**, in part. Counts I through VI of the complaint are dismissed and Plaintiff is permitted to amend the complaint to state claims under ERISA.

So ordered.